# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LISA GILLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 04 C 4012 |
| ) | Judge Joan H. Lefkow |
| TWENTY THREE EAST ADAMS STREET ) | |
| CORPORATION d/b/a MILLERS PUB and ) | |
| VAN GALLIOS and ARIS GALLIOS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In this purported class action lawsuit, plaintiff Lisa Gillis ("Gillis") alleged that her former employers, Twenty Three East Adams Street Corporation d/b/a Miller's Pub, Van Gallios, and Aris Gallios (collectively, "Miller's"), deducted from her tips a percentage of the customer gratuities charged on credit cards in violation of the Fair Labor Standards Act, 28 U.S.C. §101 *et seq.* ("the FLSA"), the Illinois Minimum Wage Act, 820 ILCS 105/4, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* She also asserted a claim of common law conversion. Before the court is Miller's motion for summary judgment. The applicable standard for summary judgment, *see* Fed. R. Civ. P. 56(c), and the material facts are not in dispute. For the reasons stated below, the court grants Miller's motion.

## I. UNDISPUTED FACTS

As a server at Miller's, Gillis received an hourly wage plus income from tips left by customers. Beginning in October 2001, Miller's began deducting from its servers' tips the same percentage of the servicing fee or "discount rate" that it was charged by credit card companies to process customer payments and notified its servers of this practice. The precise amount deducted

from a tip corresponded to the type of credit card used to pay the tip, as the various credit card companies charged different servicing fees. Thus, for example, since American Express charged Miller's a 2.95% servicing fee to process a charge made on an American Express credit card, Miller's deducted 2.95% of the tip that was included in that charge. The amount deducted from a server's tips never exceeded the amount that Miller's paid as a servicing fee to the credit card companies to process the tip.

## II. DISCUSSION

This action raises a matter of first impression within this circuit: whether an employer violates the FLSA and Illinois Minimum Wage laws by withholding from an employee's tip a percentage of a gratuity charged on a credit card as reimbursement for the servicing fee that the employer pays to the credit card company to process the gratuity. The FLSA establishes a minimum wage;[1] however, § 203(m) of the FLSA permits employers to pay less than minimum wage to employees who receive tips if an employer satisfies two conditions: (1) the employee must be notified of such a plan; and (2) "all tips received by such employee [must be] retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Sorensen v. CHT Corp.*, Nos. 03 C 1609, 03 C 7362, 2004 WL 442638, at *1 (N.D. Ill. Mar. 10, 2004), *quoting* 29 U.S.C. § 203(m). Gillis argues that the clear and unambiguous language of § 203(m) supports her claim that Miller's credit card deduction policy violates the FLSA and Illinois' wage laws.

---

[1] As recognized by Gillis, the tip credit requirements under Illinois law are substantially the same as the FLSA's requirements. Neither party has identified any operative difference between the statutes that would require a separate analysis or yield a different result. Accordingly, the court's analysis of the FLSA's tip credit requirements applies equally to the Illinois Minimum Wage laws.

2

As this is a matter of first impression, there is no precedent to follow within the Seventh Circuit; however, the Sixth's Circuit decision in *Myers v. Copper Cellar Corporation*, 192 F.3d 546, 553 (6th Cir. 1999), is both persuasive and instructive. *See Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633 at 636 (7th Cir. 1986) ("Although decisions of other circuits are not necessarily controlling, the district courts should give them substantial weight.").

In *Myers*, plaintiff-restaurant employees claimed that the deduction of a credit card service charge from their tips violated § 203(m), arguing, like Gillis, that a tipped employee must be permitted to retain all gratuities received by the employee except for those tips shared in a pooling arrangement. 192 F.3d at 552. In rejecting this argument, the Sixth Circuit held, "[A]s a matter of law, an employer may subtract a sum from an employee's charged gratuity which reasonably compensates it for its outlays sustained in clearing that tip, without surrendering its section 203(m) partial set-off against wages." *Id.* at 553. The court reasoned that while Congress intended that a tipped employee be permitted to retain *all* of his or her gratuities, "Congress patently did *not* intend that the tipped employee should ever receive *more* than that amount." *Id.* (emphasis in original). A charged customer gratuity only becomes a "tip" after the employer liquidates it, which includes paying the credit card fee, and transfers the proceeds to the tipped employee. *Id.* at 554. Prior to such a transfer, the employer retains an "obvious legal right to deduct the cost of converting the credited tip to cash." *Id.* The Sixth Circuit then found that credit card deduction schemes are valid as long as the employer proves by a preponderance of the evidence that, "*in the aggregate*, the amounts collected from its employees, over a definable time period, have reasonably reimbursed it for no more than its total expenditures associated with credit card tip collections." *Id.* (emphasis in original).

3

In this case, there is no dispute that, at all times, the amounts deducted from the employees' tips never exceeded the corresponding servicing fees that Miller's paid to the credit card companies to process the tips. The Sixth Circuit even anticipated this precise situation when it posited that "the adoption of a system whereby the employer deducts no more than the actual processing tariff assessed by the credit service provider on each individual charged gratuity would be, as a matter of law, *per se* reasonable." *Id.* at 555 n.16 (emphasis in original). As such, Miller's credit card deduction scheme is valid and reasonable, and Miller's did not violate the FLSA or Illinois' Minimum Wage laws by utilizing this scheme.

This court's decision, like that of the Sixth Circuit, is in accord with numerous pronouncements from the U.S. Department of Labor ("DOL"), the agency charged with the administration, interpretation, and enforcement of the FLSA. The DOL has construed the FLSA to permit an employer's reduction of an employee's charged tip by an amount no greater than that charged by the credit card company. *See* Wage and Hour Opinion Letter, 99 WHM 1254 (Opinion WH-410) (March 28, 1977) ("[W]e will not question a practice whereby the employer reduces the amount of credit card tips paid over to the employee by an amount no greater than that charged him by the credit card company."). The DOL's Field Operations Handbook includes a similar provision:

> Where tips are charged on credit cards, [the Wage and Hour Division] will not question the reduction of the credit card tips paid over to the employee if the amount deducted is no greater than the percentage charged by the credit card company. For example, where a credit card company charges an employer 5 percent on all sales charged to its credit service, the employer may pay the employee 95 percent of the tips without violating FLSA.

U.S. Department of Labor, *Field Operations Handbook* § 30d05(a) (Dec. 9, 1988). Likewise, the DOL's Fact Sheet No. 15 states that "[w]here tips are charged on a credit card and the employer must

4

pay the credit card company a percentage on each sale, then the employer may pay the employee the tip, less that percentage." Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA), *available at* http://www.dol.gov/esa/regs/compliance/whd/whdfs15.htm. The DOL recently reiterated its approval of this tip deduction practice: the "Wage and Hour Division does not question the practice whereby the employer reduces the amount of credit card tips paid to the employee by an amount no greater than the amount charged to the employer by the credit card company." Wage and Hour Opinion Letter, FLSA 2006-1 (January 13, 2006).

While the court is not required to defer to the DOL's interpretation of the FLSA as it relates to this case, the court nevertheless finds the DOL's interpretations persuasive. *See Skidmore v. Swift & Co.*, 323 U.S. 134 at 140, 89 L. Ed. 124, 65 S. Ct. 161 (1944) ("We consider that the rulings, interpretations and opinions of the Administrator under [the FLSA], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). As aptly recognized by Miller's, the DOL's pronouncements are persuasive because they are reasonable and directly on point to the issue in this case and because the DOL has maintained a consistent and largely unchallenged position for more than twenty-eight years.

Gillis, however, has urged this court to depart from the Sixth Circuit's well-reasoned decision and the DOL's pronouncements, arguing that both the Sixth Circuit and the DOL ignored the controlling regulation in reaching their results. This assertion is belied by the careful consideration given by the Sixth Circuit to the precise language used in § 203(m) and its examination of relevant regulations. *See Myers*, 192 F.3d at 554, *citing* 29 C.F.R. §§ 531.52 and 531.53. Moreover, the only basis for Gillis' assertion against the DOL is that the DOL reached a conclusion contrary to the

position that Gillis has taken, which hardly establishes that the DOL ignored the controlling regulation.

Additionally, Gillis argues that the Sixth Circuit's decision was erroneous because it relied heavily on the DOL's pronouncements on this issue and these pronouncements are not entitled to deference under *Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984). This argument also fails. Neither this court nor the Sixth Circuit has construed the relevant provisions of the Opinion Letters, Handbook, or Fact Sheets of the DOL as binding precedent. *See Myers*, 192 F.3d at 554 ("Although [the DOL's] administrative pronouncements do not bind the courts, they nonetheless provided some persuasive authority. . . ."). Rather, both the Sixth Circuit and this court have relied on these sources only after finding them persuasive. *See Christensen* v. *Harris County*, 529 U.S. 576 at 588, 146 L. Ed. 2d 621, 120 S. Ct. 1655 (2000) ("[I]nterpretations contained in formats such as opinion letters are 'entitled to respect' . . . but only to the extent that those interpretations have the 'power to persuade.'"), *citing Skidmore*, 323 U.S. at 140. As such, *Chevron* is inapplicable to the present matter. *See Sehie* v. *City of Aurora*, 432 F.3d 749 at 753 (7th Cir. 2005) ("Interpretations such as those in opinion letters - like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law - do not warrant *Chevron*[]-style deference."), *quoting Christensen*, 529 U.S. at 587.

Because Miller's has violated neither the FLSA nor the Illinois Minimum Wage laws by deducting from the tips of its servers an amount no greater than that which is necessary to reimburse it for its expenses in processing credit card tip collections, Miller's is entitled to judgment as a matter of law.

## ORDER

For the reasons stated above, the court grants Miller's motion for summary judgment [#17].

This case is terminated.

Dated: March 6, 2006                    Enter: _____
                                               JOAN HUMPHREY LEFKOW
                                               United States District Judge